Weight, J.,
delivered the opinion of the Court.
The contest here arises upon the construction of the will of William Jones, who died in the year 1844.
The second clause of the will reads as follows: “ That all my perishable property, such as cattle, horses, hogs, &c., with the exception of a sufficiency for the support of the fainily, be sold by my executors, and all my honest debts paid out of the proceeds by my ex *185 ecutors; the balance of money arising from such sale to be applied to support and educate my minor children.” And the first part of the third clause, as follows: “ I give to my beloved wife, Zilpha Jones, during her lifetime or widowhood, the tract of land whereon I now live, together with one hundred acres entered by me, lying in the southwest corner of the home tract, together with a sufficiency of all kinds of stock for an ample support, household .and kitchen furniture.”
And in a subsequent part of the same clause, he gives to his son, ' William B. Gr. Jones, after the death or marriage of his wife, the tract of land devised to her for life or widowhood; and directs her to dispose of two mares — one a sorrel and the other a brown mare — as she might think right to settle debts due and shortly to fall due.
He then gives his wife, during life or widowhood, his two negro women, Creasy and Alley, and her child Lucinda, and their increase; and, finally, provides that all the property given to his wife, except the land given to his son William, shall, at her death or intermarriage, be sold, and the money equally divided between his children named in the will.
The wife of the complainant is one of these children and remaindermen, and brings this bill against the personal representatives of the executors of her father to recover her share in his estate under the will.
The testator, at his death, left a considerable family, consisting of his widow and several minor children, and three slaves of little value, together with the tract of land -whereon he lived, some stock and personal estate of no great value. He left very little, if any, money.
*186 His executors, after his death, met and examined the amount and condition of his estate, and determined that it was not more than sufficient to support his family and educate his children, and, therefore, left it with the widow for that purpose, and made no sale of anything, hut reported that the debts of the estate had been paid. The widow and her family resided upon the land devised to her for life until her death, in 1858, and she has no personal representative before the Court.
We are of opinion that, under this will, Zilpha Jones, the widow, took an estate for life in the land, slaves, and other personal estate devised to her — including therein so much of the testator’s cattle, horses, hogs, stock of every kind, household and kitchen furniture, and other personal effects as were then necessary, amply to support her and her family; that it -was the intention of the testator that his widow should enjoy and use this property in specie, and that the same should not he sold by his executors during her life.
It results that the remaindermen are only entitled to such part of the property originally given as remained after the death of the tenant for life. If the tenant for life has wasted or converted any part of the chattels to unauthorized uses, her estate will be liable for the amount so wasted or converted.
But if it were consumed in the use intended to be made of it, or perished by time, or death of animals, or wear and tear of furniture and farming tools, the rights of the remaindermen are defeated, and they are entitled to nothing except what remained of the original tock.
The executors of the testator cannot be held respon *187 sible for this property while in the possession of the widow.
The rents and use of the land, the hires and labor of the slaves, the accessions, crops, young animals — the offspring of those originally given — new furniture, tools, &c., constructed by the labor of the property given, and the entire fruits of the life estate belong to the tenant for life, absolutely, and make no part of the estate of the testator. Woods v. Sullivan, 1 Swan, 507; Henderson v. Vaulx and Wife, 10 Yer., 30; 1 Hum., 498.
We are satisfied, from the proof in this record, that the testator left very little, if any, money, and that the stock and other- personal effects left with the widow were not more than sufficient for the support of herself and family, and the education of her minor children. But if desired, complainants may have an inquiry before the master as to this matter, with a view to reach their share in any surplus — charging the surplus, however, if any exist, with the funeral expenses and such debts of the estate, and the costs and charges of its administration, as may have been paid by the executors or the widow, or as may be proper.
And any of the personal estate which may have been advanced or given off to any of the children will not be charged either to the widow or executors, but the same will be adjusted among the children.
Wo account will be taken as to the rents' of the Gulledge tract of land, because we are satisfied nothing is due complainants as to that part of the estate.
In the account of the sales of the personal estate, made in 1853, after the death of the tenant for life, by Henry Luton, the executor of William Jones, care *188 ■will be taken only to charge him with the proceeds of such of the original property or stock of the testator as remained after the death of the tenant for life, upon the principles of this opinion.
And the said executor, or his estate, shall have such credits or allowances as may be just and proper in taking the account of such sale.
As to the slave Vina, alleged to have been sold by the widow, her estate should only be held to account to the remaindermen for her value at and interest from the time of the widow’s death; and her personal representative should be made a party, so that it may be decreed against Henry Luton, the executor, if he participated with her in the breach of trust in the sale of this slave, will be held liable, jointly, with her estate, for the value of the slave and interest. As to his liability, we leave the question open for the decree of the Chancellor, when the personal representative of the widow shall become a party, upon the- proofs and principles applicable to the case. If she received the proceeds of the sale, her estate will be held, primarily, liable. And ■ if applied to any extent in payment of the debts of the testator, her estate will, so far, be allowed credit in the account with the remaindermen.
As the decretal order of the Chancellor, and the report of the clerk and master in the Chancery Court, proceed upon principles in some degree differing from the above, the former will be reversed and the latter set aside, and the cause remanded to the Chancery Court at Waverley to be further proceeded in upon the principles of this decree.